UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEYZELL WALKER,

                    Plaintiff,

                                          **DECISION AND ORDER**
        -vs-                              **No. 6:19-cv-06334(MAT)**

CITY OF ROCHESTER, MICHAEL DAVIS,
MONROE COUNTY, MATTHEW BROWN, and
MUHAMMAD MOHAMED, Landlord,

                    Defendants.

_____

## I.   Introduction

Proceeding pro se, Jeyzell Walker ("Walker") instituted this
action by filing a Complaint (Docket No. 1) and Motion for Leave to
Proceed In Forma Pauperis ("IFP Motion") (Docket No. 2) on May 6,
2019. The Court conducted an initial screening of the Complaint
pursuant to 28 U.S.C. § 1915(e)(2). On June 12, 2019, the Court
issued a Decision and Order (Docket No. 3) granting the IFP Motion
and dismissing the Complaint for lack of jurisdiction. Judgment was
entered in favor of defendants the City of Rochester ("the City");
Monroe County ("the County"); Matthew Brown, Esq., a County
employee ("Attorney Brown"); Michael Davis, Esq., a City employee
("Attorney Davis"); and Muhamed Mohamed ("Mohamed"), Walker's
former landlord, on June 12, 2019 (Docket No. 4). On June 13, 2019,
Walker filed a Motion for Reconsideration with Exhibits (Docket No.
5) seeking reconsideration of the Court's Decision and Order

dismissing the Complaint. Additional Exhibits (Docket No. 5-1) from Walker were received by the Court on June 20, 2019. For the reasons discussed below, the Court has re-screened the Complaint and finds that it fails to state a claim upon which relief may be granted and that amendment would be futile. Accordingly, the Court dismisses the Complaint without leave to amend. Walker's Motion for Reconsideration is denied.

## II. Summary of the Evidence Submitted by Walker

The Court first will summarize the information in the Exhibits (Docket Nos. 5 & 5-1) submitted by Walker in order to give context to the rather bare-bones allegations in the Complaint.

On February 5, 2018, Walker commenced an action in New York State Supreme Court, Monroe County ("Monroe County Supreme Court") by filing a complaint ("State Court Complaint") (Docket No. 5, pp. 30-31 of 72[1]). <u>Walker v. Monroe County, et al.</u>, Index No. 2018/00913 (Monroe Cty. Sup. Ct.). As defendants, Walker named the City, the County, and her landlord, Mohamed.[2]

The State Court Complaint alleged that Walker entered into a residential lease agreement for 449 Child Street ("the Property") with Mohamed in December 2016. According to Walker, the City issued

---

[1]
Citations to "p. of #" or "pp. of #" refer to the page numbers at the top of the page which are automatically assigned by the Court's electronic filing system, CM/ECF.

[2]
Walker identified this individual in the State Court Complaint as "Muhammad Muhammad a/k/a Mohamed Mohamed."

a certificate of occupancy for the Property in November 2016, prior to her execution of the lease. Walker moved into the Property with her three children. While living there, she went to college and studied to be a mechanic.

Walker asserted that after she moved into the Property, it began to deteriorate and Mohamed failed to make necessary repairs. In particular, Walker asserted that "the hot water tank went down with furnace because of toxic of [sic] mess and backed up sewage from main line[,]" causing her to have to evacuate the house for 24 hours. Docket No. 5, p. 30 of 72. Walker alleged that on December 4, 2017, she contacted the City about the Property, and a building inspector, Christopher Frank ("Inspector Frank"), "came out a[nd] stated the roots seen on foundation inside is the deterioration of property" and further "stated he will be placing violation in the city public record." Docket No. 5, p. 28 of 72 (quotation omitted). Walker alleged that she became sick with "sinusitis and a respiratory infection" in September 2016, and again on September 11, 2017, as a result of a "large consumption of Mold in [her] home." Docket No. 5, p. 31 of 71. She "came into and [sic] emergency 24 hour evacuation situation from the poor housing hazarded situation with mold in the property and [she] was very sick and went to the hospital on Sept, 11, 2016 and was diagnosed with COPD and [she] didn't understand why." Docket No. 5-1, p. 12

of 36.[3] She has had "medical treatment" including an "inhaler for breathing and other medication for [her] coughing and back pains for the situation[,]" which has "change[d] [her] career life and will like to be compensations [sic] for all pain and suffering and for housing conditions." Id. Walker alleged that her respiratory problems have caused her to be unable to work; she sought $3.7 million in damages. Id. Walker faulted the City because it had "not applied force for [her] landlord to keep house up to code until the reports of [her] conditions." Docket No. 5, p. 31 of 71 (quotation omitted). Walker accused Mohamed of breaching the lease agreement for 2016-2017 and 2017-2018 by failing to make necessary repairs and remedy the unsafe conditions at the Property. See id. The State Court Complaint contained no allegations of wrongdoing regarding the County.

The City filed a motion to dismiss the State Court Complaint pursuant New York Civil Practice Law and Rules ("CPLR") Article 3211, arguing that Walker had failed to state a cause of action for negligence against it. See Docket No. 5, pp. 26-28 of 72. The County also filed a CPLR 3211 motion to dismiss on the basis that Walker failed to allege any facts for which the County would be liable to her for the conditions at 449 Child Street. See Docket

---

[3] Walker has submitted a letter dated August 16, 2018, from her primary care physician, indicating that she has respiratory symptoms consistent with allergic hypersensitivity likely due to environmental allergens (e.g., grasses, weeds, and/or molds). The doctor stated that her symptoms are managed with a combination of prescription and over-the-counter medications but return without the use of these medications.

No. 5, pp. 34-35 of 72. In addition, the County asserted, Walker failed to file a timely Notice of Claim, a prerequisite to suing the County, and failed to file the State Court Complaint within the applicable statute of limitations. Id.

On April 18, 2018, Walker sent a letter purporting to oppose the motions to dismiss. In response, Monroe Supreme Court Justice Evelyn Frazee sent a letter to Walker informing her that her letter did not contain any information or statement addressing the substance of the pending motions to dismiss, and therefore the letter would not be considered to be in opposition to the motions. Justice Frazee informed Walker that to oppose the motions, she need to submit a notarized affidavit; if she did not do so, she would be in default and the relief requested by the defendant may be granted.

On April 26, 2018, Justice Frazee held a hearing on the motions to dismiss. Walker appeared in court and opposed both motions. Justice Frazee issued a ruling from the bench granting the respective motions to dismiss filed by the City and the County. Justice Frazee ordered that the State Court Complaint be dismissed as to the City and the County only, but the claims against Walker's landlord were not dismissed. Justice Frazee issued a written order on May 9, 2018, memorializing the oral ruling. See Docket No. 5, pp. 18-19 of 72.

Walker filed a motion for an order settling the record on

appeal, which was granted by Justice Frazee on March 21, 2019. <u>See</u> Docket No. 5, pp. 20-21 of 72. Walker then pursued an appeal to the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division"). <u>See</u> <u>Walker v. County of Monroe, et al.</u>, Docket No. CA 18-00974 (N.Y. App. Div. 4th Dep't). Walker sought and received an extension of time until February 28, 2019, to perfect her appeal. Docket No. 5-1, p. 5 of 36.[4] It appears that Walker timely perfected her appeal. <u>See</u> Docket No. 5-1, pp. 1-3 of 36.

Walker filed her Complaint in this Court on May 6, 2019.

## III. Procedural Status

Although Walker's motion is one for reconsideration, the Court has decided to screen her Complaint anew, without deference to its original Decision and Order. The Court is following this course for two reasons. First, Walker is unrepresented. Second, Walker alleges she received incorrect advice from a Clerk's Office employee who informed her that she did not need to submit evidence when she initially filed her Complaint. According to Walker, she wanted to submit her evidence (Docket Nos. 5 & 5-1) at the time she filed her Complaint, but the Clerk's Office employee stated that she did not need to file these documents until later in the case. Walker asserts that had she filed the evidence (Docket Nos. 5 & 5-1) along

---

[4] The Court notes that much of Docket No. 5-1 is duplicative of Docket No. 5 or not factual in nature, i.e., copies of legal research conducted by Walker.

with her Complaint, then the Court would not have dismissed the Complaint for lack of jurisdiction. Accordingly, the Court is treating Docket Nos. 5 and 5-1 as Exhibits to the Complaint (Docket No. 1) for purposes of re-screening the Complaint.

## IV.  **Standard of Review**

Because the Court has granted Walker leave to proceed <u>in forma pauperis</u>, the screening requirements of 28 U.S.C. § 1915(e) apply. Section 1915(e)(2) provides in pertinent part that

> [n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court <u>shall dismiss the case</u> at any time if the court determines that--
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal--
>     (i) is frivolous or malicious;
>     (ii) <u>fails to state a claim on which relief may be granted</u>; or
>     (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2) (emphases supplied).

The Supreme Court has held that "[a] document filed <u>pro se</u> is 'to be liberally construed[.]'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)). "[A] <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" <u>Id.</u> (quoting <u>Estelle</u>, 429 U.S. at 106; internal quotation marks omitted in original; citing Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice")). At this stage of the proceeding, the Court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to

-7-

be true." <u>Kiobel v. Royal Dutch Petroleum Co.</u>, 621 F.3d 111, 124 (2d Cir. 2010) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009); other citation omitted)).

Notwithstanding a plaintiff's unrepresented status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557 (brackets omitted in original). While "detailed factual allegations" are not required, a pleading that contains merely "unadorned, the-defendant-unlawfully-harmed-me-accusation[s]" will not suffice. <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555; other citation omitted).

## V.  Summary of the Allegations in the Complaint

For her First Claim, Walker alleges as follows:

I been filing brief for a year and tired of the Appellant excuses I've seen Evelyn Frazee Judge Feb. 28 2019 The Court provided copies of order to be filed with brief and Eveyln Frazee stated all she need was orders filed and

she would be ready to proceed I [illegible] for extention
[sic] and the Appellant keep send excuse after excuse
about [illegible] text on what size it is

Docket No. 1, p. 4 of 5. Based on the context, the Court presumes

that by "Appellant," Walker is referring to the Appellate Division.

When asked to state what she wishes the Court to do, Walker

wrote as follows:

I want the case to be presentented [sic] and Evidence
from Evelyn Frazee on case evidence to be looked and
justice of fairness for my [sic] and children.

Docket No. 1, p. 4 of 5.

For her Second Claim, Walker referenced the City and County

inspections in 2017 finding mold and other violations, her FOIL

request to the County in 2017, and her sickness in September 2017.

See id. When asked what she wishes the Court to do, she stated that

she would like to resolve her case either by having Justice Frazee

or this Court by making a "decision on true facts." Under "summary

of relief sought," Walker stated that she wants $3.7 million each

from the City and the County, and $250,000 from Mohamed. She stated

she would "settle for $175,000," but it is unclear if that is with

regard to all defendants or just Mohamed.

## VI.  Screening of the Complaint

### A.    The Complaint's First Claim

As best as the Court can discern, Walker is frustrated with

the length of time it is taking for her State appeal to be heard by

the Appellate Division. It appears that Walker wants this Court to

-9-

do something to prompt a faster resolution by the Appellate Division of her appeal.

In essence, Walker is requesting that the Court issue what amounts to a writ of mandamus.[5] Federal mandamus is available only to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Federal courts have no jurisdiction to issue writs of mandamus directing a state court and its judicial officers in the performance of their duties where mandamus is the only relief sought." Bailey v. Silberman, 226 F. App'x 922, 924 (11th Cir. 2007) (summary order) ("Because the defendants named in Bailey's complaint are not officers or employees of the United States or any agency thereof, the district court lacked jurisdiction to grant the only relief Bailey requested. Accordingly, Bailey's complaint was properly dismissed as frivolous.") (citing Moye v. Clerk, DeKalb County Superior Court, 474 F.2d 1275, 1276 (5th Cir. 1973) ("[A] federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought."); footnote omitted)); see also Davis v. Lansing, 851 F.2d 72, 74 (2d Cir. 1988) (holding that "federal courts have no general power to

---

[5]     Mandamus is "[a] writ issued by a court to compel performance of a particular act by a lower court or a court or a governmental body, usu. to correct a prior action or failure to act." BLACK'S LAW DICTIONARY, 1046 (Bryan A. Garner ed., 9th ed. 2009).

compel action by state officials"); <u>Gurley v. Superior Ct. of Mecklenburg Cty.</u>, 411 F.2d 586, 587–88 & nn. 2–4 (4th Cir. 1969) (holding that federal courts have no supervisory authority over state courts).

Walker has provided no factual or legal basis for this Court to compel action by the Appellate Division, an intermediate appellate court of New York State. As the Court originally held, it lacks jurisdiction to compel the Appellate Division to rule on Walker's Appeal. The First Claim in the Complaint fails to state a claim because Walker is not entitled to the relief she seeks as a matter of law. <u>See</u> <u>Bell v. South Carolina</u>, No. 2:17-CV-2176-TMC-MGB, 2017 WL 6767385, at *4 (D.S.C. Aug. 24, 2017) (dismissing petitioner's motion for a writ of mandamus seeks to force the South Carolina Supreme Court to issue him a writ of <u>certiorari</u> because motion fails to state a claim for relief as a matter of law), <u>report and recommendation adopted</u>, No. CV 2:17-2176-TMC, 2018 WL 263817 (D.S.C. Jan. 2, 2018), <u>aff'd</u>, 724 F. App'x 204 (4th Cir. 2018), <u>reh'g denied</u> (July 3, 2018), <u>cert. denied</u>, No. 18-8679, 2019 WL 2331340 (U.S. June 3, 2019), <u>reh'g denied</u>, (U.S. Aug. 5, 2019).

**B.    The Complaint's Second Claim**

**1.    The Complaint Fails to State a Plausible Claim Against the County and the City**

Title 42 U.S.C., Section 1983 ("§ 1983") imposes liability on, and creates a federal right of action against, anyone who, under

color of state law, deprives a person "of any rights, privileges, or immunities secured by the [federal] Constitution and [federal] laws." Blessing v. Freestone, 520 U.S. 329, 340 (1997) (quoting 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999) (citing Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993).

"Municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978)) A municipality such as the City or the County "cannot be held liable solely because it employs a wrongdoer; in other words, a municipality cannot be held liable under § 1983 on a respondeat superior[6] theory." Monell, 436 U.S. at 691 (emphasis in original). Rather, to state a § 1983 claim against a municipality, a plaintiff must assert that the alleged violations

---

[6] Respondeat superior is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." BLACK'S LAW DICTIONARY, 1426 (Bryan A. Garner ed., 9th ed. 2009).

were committed pursuant to an official policy, practice or custom. Monell, 436 U.S. at 694. "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista, 702 F.3d at 397. The existence of a municipal policy or custom may be pleaded in several ways:

> A plaintiff may allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.

Calicchio v. Sachem Cent. Sch. Dist., 185 F. Supp.3d 303, 311 (E.D.N.Y. 2016) (citations omitted).

### a. Failure to Allege Denial of a Constitutional Right

The Court begins with the third element—whether Walker has plausibly alleged the denial of a constitutional right. See Batista, 702 F.3d at 397.

The Court notes that the documents submitted as part of Docket Nos. 5 and 5-1 confirm Walker's allegations that there were problematic housing conditions at 449 Child Street. At the same

-13-

time, they demonstrate that City and County officials were responsive to Walker's complaints. For instance, there is a printout dated December 6, 2017, listing "Open Case Violations" at 449 Child Street, i.e., vegetation penetrating the walls from outside; an infestation of mice and roaches in the interior of the house, visually confirmed by City Inspector Frank; and leaking pipes. Docket No. 5, p. 53 of 72. City Inspector Frank issued a Notice and Order dated August 27, 2018, to Mohamed outlining the existing code violations at 449 Child Street, including those documented in December of 2017. See Docket No. 5, pp. 65-70 of 72. The Notice stated that the failure to correct the potentially hazardous violations within one day would result in the case being immediately referred to the enforcement unit for issuance of an appearance ticket. The Notice also stated that the building must be vacated at once due to the violations listed. In addition to the vermin infestation and leaking pipes found in December 2017, on August 24, 2018, the toilets in both bathrooms were found to be plugged beyond the ability to be used. Docket No. 5, p. 66 of 72.

There is also a Housing Complaint Investigation Form (Docket No. 5, p. 64 of 72) completed by Public Health Sanitarian Trainee Laura Sorenson ("County Inspector Sorenson") reflecting phone calls with Walker and visits to 449 Child Street by County Inspector Sorenson. On December 1, 2017, County Inspector Sorenson found a large pile of mold in wet sand near the sewer cap that had a smell

-14-

around it. County Inspector Sorenson sent a violation letter to Mohamed. The last entry on the Investigation Form indicates that when County Inspector Sorenson followed up with Walker on December 18, 2017, Walker said that "they had done repairs on the wall of the basement and cleaned up the mold," but then said "they should be doing the work on the wall repair." Id. Accordingly, County Inspector Sorenson remained "unclear as to whether or not there is repair work being done on the wall or not" and told Walker she would get in touch with Mohamed to ask him. Id.

In any event, even assuming that the County and the City may be held liable on a theory of respondeat superior, which it may not, none of Walker's allegations plausibly suggest any wrongdoing on the part of County Inspector Sorenson (who is not named as a defendant). Likewise, none of Walker's allegations plausibly suggest any wrongdoing on the part of City Inspector Frank (who also is not named as a defendant) in connection with his site visit and documentation of various code violations at 449 Child Street in December 2017. As noted above, City Inspector Frank ultimately issued a "Notice and Order" dated August 27, 2018, to Mohamed, the landlord, stating the Property was uninhabitable due to the unremedied housing code violations. See Docket No. 5, pp. 65-70 of 72. The Notice and Order warned that the failure to correct the violations within one day of the date of issue "will result in this case being immediately referred to the enforcement unit for the

issuance of an appearance ticket." Docket No. 5, p. 67 of 72 (capital letters omitted). Thus, far from suggesting that there was a failure by City and County policy makers to properly train or supervise their subordinates, the documents submitted by Walker demonstrate that the City and County employees whom Walker encountered were responsive to her complaints and took appropriate actions to attempt to force Mohamed to remedy the housing violations. There is no suggestion of "deliberate indifference" to Walker's rights by any municipal employees. Accordingly, the Court finds that Walker has not plausibly alleged the "constitutional deprivation" element of a Monell claim.

### b.  Failure to Allege Causation

The only allegation in the Complaint against the City is that it issued a certificate of occupancy for 449 Child Street prior to her moving into the Property in December 2016. Docket No. 1, p. 4 of 5. Walker claims that the City should not have issued the certificate of occupancy because on December 4, 2017, the City documented housing code violations including the presence of mold in the basement. Id.

Walker's factual allegations undermine the causation element of a Monell claim because there are no factual allegations implying that the mold existed at the time the certificate of occupancy was issued for 449 Child Street in 2016. In fact, the documentation Walker has submitted suggests that the mold occurred after she

moved into the Property, around the time her basement flooded. In her notes documenting her initial inspection on December 1, 2017, County Inspector Sorenson found a "large pile of mold in wet sand near the sewer cap," and "[t]he complainant [i.e., Walker] explained that her basement had flooded a while ago, which made them replace the furnace."[7] Docket No. 5, p. 64 of 72. County Inspector Sorenson said she would follow up with the landlord. Id.

### c.  Failure to Allege a Municipal Policy

Finallyr, Walker has not alleged any non-conclusory facts that the City or the County had an official policy or unofficial custom, pattern, or practice to deny citizens their constitutional rights in regard to housing. Walker's belief that the City's issuance of a certificate of occupancy was erroneous is based on pure speculation. Even assuming that the individual who issued the certificate of occupancy misapplied a City ordinance there is no basis for inferring that this amounted to a denial of Walker's Federal constitutional rights. Finally, a single incident alleged in a complaint generally does not suffice to show a municipal policy. Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (citing City of Canton v. Harris, 489 U.S. 378, 387 (1989); other citation omitted).

_____

[7]

    Walker also has submitted an invoice from Ryan Plumbing and Heating Service indicating that repair work was done on her furnace (the control board was replaced) on October 6, 2017. Docket No. 5, p. 10 of 72. This suggests that the flooding, which led to the mold, occurred somewhere in the October 2017 time-frame.

**2. The Complaint Fails to State a Plausible Claim Against Attorney Davis and Attorney Brown**

Based on the documents submitted by Walker, Attorney Davis and Attorney Brown appeared on behalf of the City and the County, respectively, in connection with Walker's negligence action in Monroe County Supreme Court.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)). However, the Complaint contains no allegations against either Attorney Davis or Attorney Brown plausibly suggesting their personal involvement in the housing-related complaints by Walker. This failure to plead personal involvement warrants dismissal of Attorney Davis and Attorney Brown as defendants as a matter of law.

Furthermore, absolute immunity "protect[s] officials from personal liability for the performance of certain discretionary acts[,]" Spear v. Town of W. Hartford, 954 F.2d 63, 66 (2d Cir. 1992), including "government attorneys defending civil suits," id. (citing Barrett v. United States, 798 F.2d 565, 572 (2d Cir. 1986) (State assistant Attorney General who was representing state in Court of Claims action brought against it for negligence of state institution enjoyed absolute immunity with respect to later suit against him for allegedly covering up involvement of Federal

Government in the actions giving rise to the initial suit)). Here, Attorney Davis's and Attorney Brown's only connection with Walker is the fact they defended the City and the County, respectively, in the civil action commenced by Walker in Monroe County Supreme Court. Accordingly, they are absolutely immune from suit under § 1983, see Barrett, 798 F.2d at 572, and must be dismissed as defendants on this basis.

### 3. The Court Cannot Compel the Monroe County Supreme Court to Rule on Plaintiff's Claim

To the extent that Walker demands that Monroe County Supreme Court Justice Frazee hold a trial and award damages on her claims raised in the State Court Complaint, the Court is without jurisdiction to order such a remedy. Under the Rooker-Feldman[8] doctrine, a Federal district court has no authority to review final judgments of a State court in judicial proceedings, except for general constitutional challenges and reviews pursuant to an application for a writ of habeas corpus. See Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002) ("The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress.") (internal citations omitted); Phifer v. City of New York, 289 F.3d 49, 55 (2d

---

[8]

The doctrine's name is derived from Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482-86 (1983).

Cir.2002). The Supreme Court further held that Federal district courts are without subject matter jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486.

Thus, under Rooker-Feldman, this Court lacks subject matter jurisdiction over Walker's challenge to the decision of the Monroe County Supreme Court granting the City's and the County's motions to dismiss the State Court Complaint. To challenge such a determination, Walker must appeal it through the State appellate courts—which she presently is doing—before she may seek Federal review, not in a Federal district court, but in the United States Supreme Court. See 28 U.S.C. § 1257(a). To the extent Walker challenges the decision of the Monroe County Supreme Court, such a claim is dismissed for lack of subject matter jurisdiction. See, e.g., Kropelnicki, 290 F.3d at 128 (plaintiff-debtor's claim that misrepresentations allegedly made to her lawyer by creditor's attorney and attorney's office manager violated the Fair Debt Collection Practices Act was inextricably intertwined with the State court judgment in the underlying debt collection action and, as such, was barred from review by the Federal court of appeals by the Rooker-Feldman doctrine); Conway v. Garvey, No. 03 CIV. 7958 (DC), 2003 WL 22510384, at *4 (S.D.N.Y. Nov. 5, 2003) (holding that district court did not have subject matter jurisdiction over

parent's § 1983 challenge to decision of State family court, directing plaintiff to attend counseling or lose his unsupervised visitation sessions with his child; to challenge constitutionality of such determination, parent was required to appeal it through State appellate courts before seeking Federal review, not in Federal district court, but in United States Supreme Court), aff'd, 117 F. App'x 792 (2d Cir. 2004) (summary order) ("We affirm for substantially the reasons stated by the district court . . . .").

**C.  Leave to Amend Is Inappropriate**

It is "within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dunn & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, the Court has considered Walker's Complaint as well as all of the proof that she intends to offer at trial in support of her claims. After carefully reviewing all of the documentation Walker has submitted, the Court is compelled to conclude that her claims have no arguable basis in law or fact. The reason for the

Court's dismissal of the Complaint is substantive; it is clear that better pleading would not lead to a different result. See Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied as futile where problem with complaint is substantive and better pleading would not cure it). Therefore, because any amendment would be futile, the Court declines to grant Walker leave to amend.

D. **The Court Declines to Exercise Supplemental Jurisdiction Over Any Potential State Law Claims Against Mohamed and the Other Defendants**

Walker has not specifically asserted any State law based claims in her Complaint. However, the Court notes that she has asserted negligence claims against all of the named defendants in State court. It appears that her negligence claim against Mohamed is still pending in Monroe County Supreme Court, and she has appealed Justice Frazee's dismissal of her negligence claims against the City and the County.

Under 28 U.S.C. § 1367(c)(3), it is well settled that "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT & T Corp., 138 F.3d 46, 57 (2d Cir. 1998). Here, the Court is dismissing the Complaint with prejudice; thus, there are no longer any claims over

which this Court could potentially exercise original jurisdiction. Furthermore, "judicial economy will be disserved" by this Court assuming jurisdiction over any State law claims given that there is a "well-advanced" pending parallel State court action involving the same factual circumstances. Brooklyn Heights Ass'n v. Nat'l Park Serv., 818 F. Supp.2d 564, 571 (E.D.N.Y. 2011) (citation omitted). Accordingly, to the extent that Walker asserts any State law claims in this Complaint, the Court will decline to exercise supplemental jurisdiction over them. Such claims are dismissed without prejudice. Id. at 572 (citing Benjamin v. New York City Dept. of Health, 144 F. App'x 140, 143 (2d Cir. 2005) (unpublished opn.)).

## VII. Conclusion

For the reasons discussed above, upon re-screening of the Complaint (Docket No. 1) and the Exhibits (Docket Nos. 5 & 5-1) pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court finds that it fails to state a claim upon which relief may be granted and that amendment would be futile. Accordingly, the Court dismisses the Complaint with prejudice, without leave to amend. Walker's Motion for Reconsideration (Docket No. 5) is denied with prejudice.

**SO ORDERED**

*s/ Michael A. Telesca*

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    August 14, 2019
          Rochester, New York